311-0309, 15 warning, appellant by Andrew McConey v. The City of Joliet, appellee by John Watt Is it McConey? McConey. McConey, okay, my bad. Proceed. May it please the Court, Andrew McConey on behalf of the Appellant. As the Court is aware, this case involves a collision between a vehicle and a pedestrian, Joanne Warring, on September 5, 2005, at a crosswalk in front of Provena Hospital in Joliet. The crosswalk and Madison Street were owned, operated and controlled by the City of Joliet. This was also a mid-street crosswalk and a crosswalk at an intersection, which is the testimony of Mr. Russell Lubash indicated raises additional concerns over and above a crosswalk at an intersection. There was also testimony and evidence, including photographic evidence, which indicated that the darkness at the intersection contributed to the collision itself. The complaint was a complaint signing essentially negligence against the City of Joliet. Willful and want negligence being one of those counts and ordinary negligence being another one of those Two of those were involved in failure to have reasonable policies for inspection of crosswalks and also failure to have a policy for reasonable inspection of lighting. The other two elements of negligence alleged against the City of Joliet were failure to maintain street lamps at the crosswalk and failure to Also in order of March 25, 2005, during trial, excluding a letter from Mr. Clark Corcoran to the City of Joliet to Mr. Dennis Duffany and also two orders relating to components of some motions to add Mr. Joseph Regis as an expert witness on behalf of the plaintiff. As pointed out in our pleading, I think is important here as for the motion for direct finding. That's covered by Illinois Code of Civil Procedure, Section 2-1110. And in that, under that statute, the implementing case law, particularly in Ray's State of Court, dictates that that's a two-tiered analysis. The first is whether or not there's at least some evidence essential to each element of the cause of action asserted. Once that tier has been satisfied, the cases, particularly Townsend v. Fassbinder and Piscuale v. View Products indicate, well, Townsend first, motions for directed finding should only be granted where all the evidence viewed most favorably to the opposing party so overwhelmingly favors the moving party that no contrary verdict based on the evidence could ever stand. The Piscuale case indicates that the entry of a directed verdict is inappropriate, quote, if reasonable minds might differ as the case unfolds. The court made a number of findings in this April 1st order, some of which are challenged in our appeal pending before the court today. Firstly, that there was no evidence presented that the city had a duty to maintain street lights on Madison Street. I point to the Cavallos v. City of Berwyn case and the case of Green v. City of Chicago and Buran v. City of Chicago Heights, which stands essentially for the proposition, and I quote, Buran, quote, the rule which protects the municipality in the exercise of its governmental functions should not be construed to relieve it from liability when the plan devised, if put in use. Although the court pointed to ComEd's maintenance of the street light which was out south of the crosswalk as evidence that the city did not owe duty of care again, I believe as a matter of law the city does owe a duty of care on crosswalks and streetways that are maintained for the public. Moreover, ComEd's maintenance of the street light south of the crosswalk does not relieve the city of liability. The court in City of Springfield v. Chevers addressed the same kind of argument made or suggested by the court and also by opposing counsel today that the intervention of a third party relieves the municipality of that duty, and the response of the Chevers court was that, and I quote, if the city by its direct act or authority causes or permits the street to go out of repair, it will be liable. The city must be presumed to have known the condition of things and should be held responsible as though it had noticed the direct consent of the municipality. There was also a finding that no evidence was presented that there was any actual constructive notice given to the city that any streetlights on Madison Street were inoperable until after the accident. In this case, for actual notice, I do point to the letter of Clark Corcoran to the City of Chicago, or the City of Chicago, that there were potential problems at the crosswalk, and although it did not specifically refer to lighting, the letter should have allowed the city to undertake some investigation, which in this case the testimony was clear that the city did not. Let me ask you on the notice issue. Hypothetically speaking, what if the streetlight went out three minutes before this accident? Is the city reliable? If the light went out three minutes before the accident occurred, I think that would be up to a finer fact. I think the case indicates here that even with, for instance, the CDL case with the fire truck where there was some oil spilled in the motor pool, the court said that even though we only know of a hazardous condition after the accident, I think it's up to a finer fact as to whether there would be liability here. Wouldn't that make the city the insurer of the safety of everybody that walked across that crosswalk? But I think the city is the insurer of the safety of everybody that walks across the crosswalk. I think that's the point of constructive notice. That having been said, again, as for constructive notice, there was in this case, as opposed to, as the court posits, three minutes prior to the accident observing a hazardous condition, there was testimony by Jesse Harper, a security guard, that he had observed inoperable streetlights on Madison Street from time to time for some period of time, that there was an incident on the night in question, and that it was dark at the crosswalk where the collision occurred. This testimony is also supported by another security guard from Provena, Dennis Mulcahy, and also by the driver of the vehicle in question, Ms. Amanda Ibarra, who testified also that the streetlights being inoperable on that street prior to that she worked at Provena, and on the night of the collision, and also that the crosswalk was dark on the night of the collision itself. And there's also testimony by officers concerning a streetlight being out just south of the intersection. And I also point to the testimony of Officer Brad Doves, who took pictures of the crosswalk itself, one with a flash, one without a flash, and a picture without a flash showing the crosswalk being dark. In terms of construction notice, I point to the Ottawa v. Hain case, where the court has looked at a number of circumstances. I cite Stills v. State of Illinois and Stogenton v. State of Illinois. Stills found that evidence of the highly-traveled nature of the road presented evidence that the state should be charged with construction notice. The Stogenton case looked to the mere existence of the hazardous condition, the conspicuousness of the hazardous condition. Here we have a hospital, a crosswalk in front of the major entranceway, and a lack of a plan for repairing defects. And again, going to the point of duration, I cite the CDL v. East Indy Fire Protection District, Baker v. Granite City, Wells v. Village of Kenilworth, where all the courts essentially said the mere existence of the hazardous condition created the question of the duration of the condition without even knowing how long that condition existed. We also argue that the letter, the executed copy of the letter from Provena City of Joliet should have been introduced at trial, although that was excluded. Again, the plaintiff learned of the executed copy during Mr. Corcoran's testimony at trial that had been requested pursuant to a lawful subpoena. Some months prior to that, it was not produced. And this was a letter that actually, according to Mr. Corcoran's testimony, should have been in Provena City of Joliet and was requested for discovery. That dealt with how fast the cars were going through the crosswalk, right? It did, Your Honor. That's right. But this case is about lighting. It is about lighting, but one of the issues we've raised is the failure to make reasonable inspections of the crosswalk. Leaving aside lighting, that's one of the allegations of the complaint. There's three charges as to lighting, one charge as to crosswalk inspections generally. And again, the testimony of Mr. Lubash was that no inspections were done even after that letter would have been received by the City of Joliet according to Mr. Corcoran's testimony. What was it about the crosswalk that contributed to the accident, aside from the lighting? Well, we also argue that there was some signage which was not compliant with the MUTCD, which is the Manual Uniform Traffic Control Devices, which essentially said that there should be a downward pointing arrow. Now, admittedly, the court said that that was not required at the time that this accident occurred. It was only recommended. And it had grandfathered in, the MUTCD had grandfathered in the noncompliant signage. But again, this is, according to Mr. Lubash's testimony, a special type of crosswalk that raises special concerns. It's not an intersection crosswalk. It's more likely that a motorist wouldn't recognize it was there. It's also in front of the main entranceway to a hospital. So, under those circumstances, we think this raises special concerns for the safety of pedestrians. Let me just ask you, with regard to the lighting, what evidence will the jury, or the trier of facts, use to determine how long that streetlight was out? The evidence would be the testimony of the security officers that observed lights being out at the intersection. The fact that one of the lights was out 83 feet south of the crosswalk, rather. But that was after the incident, correct? That's correct, Judge. So how are they going to determine how long before the accident the streetlight was out? I think that they would have to look to the testimony of the witnesses and try to make a determination that that might have been out a day before, two days before. The fact of the matter, again, is that the City of Joliet didn't undertake any, at least our argument is, reasonable means to inspect the streetlighting, so that they could have identified the streetlight being out. And there's also the issue that the intersection wasn't lit in the first place. Was there anybody that testified it was out before the accident? No, no one testified that it was out before the accident. There was just an observation that streetlights were out from time to time on Madison Street, that that light was out at the time of the accident. How long before the accident, we don't know, but again, there are cases that indicate that that creates a question of fact, and there was no evidence in those cases, like CDL or the Braun case, as to how long those conditions existed. Yet the court found in those cases that there was constructive evidence. I mean, is the Trier effect going to flip a coin, or how are they going to decide how to figure out how long it was out before the accident? Again, to the degree that there were findings in situations like this where the light was out prior, I think that that's a question for the Trier effect. I certainly appreciate your honest concerns, but again, I do believe that that's a legitimate question for the Trier effect, and the cases suggest as much. There's also the finding that no evidence was presented that the city failed to make a reasonable inspection of the crosswalk. There was testimony from Mr. Lubash that there was no investigation of the crosswalk. We believe that that doesn't – the only evidence is no reasonable care, but no care at all. There was also a finding that no evidence was presented that the city had a duty to erect additional signage. We've talked about that before, where even though this type of signage was grandfathered in, this was a minstry crosswalk that raises additional concerns for pedestrian safety. We also argue that Mr. Regis should have been allowed to testify as to these matters, and one of the reasons he was excluded was because of his testifying to matters that dealt with Provena documents. Those documents were later admitted under a 219 motion, so we believe that because those documents hadn't been produced by Joliet, it's unfair to exclude Mr. Regis, and that under those circumstances, there's no unfair surprise, particularly given that it continues as a trial in terms of testimony. As for the evidence, the charge that there was no evidence that the city had a duty to install street lighting, again, there was testimony by Mr. Lubash that he had not even looked at the IENSA published guidelines for lighting crosswalks. There was also a finding that no evidence was presented that the city's policies for inspection were deficient, and we point out here that there was no published policy, there was testimony by officers that they weren't aware of any policy. Just because there was a policy in place does not mean that that policy was sufficient. We also refer finally to the fact that there were no findings as to proximate cause of damages involved from wanton conduct, and we believe that under the requisite analysis under 2-1110, those findings have to be made by the court as to each element of the cause of action. Returning to the city's policies for street lighting inspection, again, although there was some policy in place, Mr. Lubash testified that, with the exception of treating the log for outage reports, there was a thought that follow-up would be necessary or useful to correct outages or problems in street lighting. That was never implemented. Okay, if you'll finish your thought. Okay. And so even the inspection that was put in place by the city of Joliet was not implemented in a way that was really thought to be most prudent, so in that respect also we feel that the system for street lighting inspection was not adequate, and I'll leave it at that. Okay. Thanks, Mr. Miconi. You'll have some rebuttal time, too. Thank you, Your Honor. Thank you. Mr. Weiss. May it please the Court, Counsel John Weiss for the city of Joliet. This case, and it was argued and mentioned by plaintiffs' counsel many times through the trial and before trial, that this case centers on a street light near the crosswalk. That's the crux of this whole case. We have all these tangential issues about additional signage, policies, inspections, but when you get down to it, it's about a street light that is located 83 feet away from a crosswalk. In addition, the testimony that is provided in this case is that the street light is not there to provide illumination for the crosswalk. The street light is to provide illumination for the roadway. The cases clearly state that the duty to provide illumination runs to users of the street, motorists. It does not run to pedestrians. Now, the city of Joliet does have a duty to maintain reasonably safe crosswalks and reasonably safe roadways. We're not denying that. But in this case, the street light was not there to provide illumination for the crosswalk. In addition, the street light provided by testimony was owned and maintained by Commonwealth Edison. It was not a city street light. What the city would do is if it was out, if they received a complaint that it was out, or if they found it was out, they would contact Commonwealth Edison to maintain and fix that street light.  They have some street lights in the city of Joliet are owned and operated and maintained by the city of Joliet. Some of the older street lights, declassified as being on wooden poles, are still owned by Commonwealth Edison and maintained by Commonwealth Edison. There's an agreement between the city and Commonwealth Edison that they have to maintain those poles. What the city of Joliet does when we receive notice that a light's out is we contact Commonwealth Edison with the location or possibly the number of what pole is out. Is that a common practice? It's not done now, you're saying. The new ones or replacements are in the city of Joliet? Typically, yes. That's correct. Do you know, was that a common practice in the olden days, like 1975? I don't consider it olden days, but this street light, I believe, was erected at the time St. Joseph Hospital was built, which would have been approximately 1965-1966, somewhere in that area. It was common practice in the city of Joliet, and there's no evidence to it in the record, but I believe it was common practice in other municipalities as well. There are some cases that have been cited that mention that Commonwealth Edison also, in most cases, had that obligation. I don't want to distract you too much. The crux of this case, the court found that there's no duty. I would like to just point out briefly some cases that counsel cited or mentioned this morning, in fact, regarding the test in the 2-1110 case. It's correct, first, there is some evidence of all the elements of the cause of action. If it meets that burden, which the court found in some of these instances it did not meet, then it moves on to the second tier, where the court, in taking into consideration the totality of the evidence presented, including any evidence that is favorable to the defendant. I'm citing the Fondromos case, and it's clear that you don't take the evidence and view it in the light most favorable to the plaintiff in these situations in regards to motion for judgment. That is the case in some of the judgment cases. Possibly, if you're seeking motion for judgment notwithstanding the verdict, that is not the standard in cases such as this. Let me just say, no duty. This is a crosswalk, right? Correct. And isn't a pedestrian an intended user of a crosswalk? That's correct. How can a city have no duty at all to the person using their crosswalk? This city does have a duty to maintain a safe crosswalk. We're not arguing that there's no duty to the person who's crossing the crosswalk. What we're stating is that the city upheld all its duties in relation to that crosswalk. There's no evidence that they violated any duty to that crosswalk. There's no evidence that there's any duty to provide additional signage, which is one of the recommendations. It's clear from the MUTCD, the Manual Uniform Traffic Control Devices, that additional signage was not needed. The city met the guidelines. Another item was that we did not provide any other illumination for the crosswalk, which is clear from the testimony in this case that illumination was not required under the guidelines. And, in addition, the crosswalk itself, he makes reference to this 2002 memorandum from St. Joseph's Hospital that doesn't discuss illumination or street lighting. After that memorandum had been sent, I'm not stating based upon that memorandum, but in 2004, the year before this accident, the city of Juliette did repaint and redo that crosswalk that's the subject of this lawsuit. In fact, they improved it over and above standards for the MUTCD guidelines. So, there's no additional signage needed, and it's above the guidelines. Yes, there's a duty to pedestrians at the crosswalk, but we met all of these. Any duty that we had, there was no violations. And I believe one of the final times there were no violations. Which is a far different thing from saying there's no duty. Correct. Yes, we have duties to pedestrians at crosswalks, but also a duty to motorists on the road. Correct. As to the notice issue, he makes reference to the CDL case, which regards a fire engine, lost its brake fluid and went out and crashed into a building. In that case, it wasn't necessarily how long they should have had notice, but it centered on the fact that in that case, the fire department said they had a policy that they inspected their trucks every single day. They did inspect it on that day, or for a couple days prior to that too, and they said it would be a question for the jury to determine whether or not that was a violation of duty and whether or not they should have had reasonable notice, or a reasonable person would have observed the brake fluid on the floor. In addition, the other cases in reference to notice, which he cites and describes, in those cases, there's testimony regarding the extent of time that a defect would have been present. One of the cases he cited, the defect was present for a year. In another case, there was testimony from a few individuals that it was somewhere between 4 and 12 weeks. In this case, there's zero evidence in reference to whether the light was even out beforehand. And there's no evidence as to how the stage lawyer would have had notice before this accident occurred. The testimony of Jesse Harper, who was a St. Joseph's security guard, he clearly states that he would go around and if a street light was out, he would take yellow tape and put it around that pole so that they would know that the light was out. No testimony that he put yellow tape around this pole. And based upon that, you can assume, and he didn't testify that it was out before, that it was not out in a reasonable amount of time to provide anyone notice in this case. In addition, you also have to look at the proximate cause in this case. And this court can uphold the finding of the trial court on any basis supported by the record, whether or not the trial court relied upon it or not. We need to look at what happened here. It's a tragic case, without a doubt. A nurse worked a 14-hour shift just south of where the hospital is located. For 10 months prior to this accident, she drove to and from work down Madison Street where the accident occurred every single day. Every single day. The arguments regarding there should have been more signage, crosswalks should have been better illuminated, all of these different red herrings are irrelevant. She testified, she knew the crosswalk was there. She saw it every single day. She knew the crosswalk was there. In addition, she also stated across examination, she clearly stated, and the court found as well, that she had no personal knowledge of any streetlight on Madison Street being out on the day of the accident or prior to it. She had no personal knowledge of any lights were out. Some of these other cases he cites for duties and for whether or not there was notice, there's testimony from the people involved or the drivers involved that they're driving down the street, it's light, all of a sudden they go pitch dark, and then it's black, and an accident occurs. In this case, there's no testimony that that occurred. We don't know what happened. Ms. Ibarra stated she couldn't tell how much visibility she had on the day. She didn't know how far away Ms. Warnick was before she struck her or how far away she was when she first saw her. There's no proximate cause in this case. The cause of the accident was Ibarra driving and striking the victim. In addition, to go forward, the streetlight at question is 83 feet away from the crosswalk, and there's been no evidence presented as to whether or not if that light was on or off, whether that would have had any effect whatsoever on the accident that occurred. Just briefly, a few of the other points in reference to failure to make inspections, it's clear that City of Joliet repainted this crosswalk and exceeded standards a year prior to this accident. It's clear that there's no duty of additional signage based on the testimony presented. Once again, no evidence of a duty to illuminate the crosswalk based on the standards, and that also there's no study required according to those guidelines. The studies that are discussed in the brief by Plaintiff revolve around new lighting systems. This was not a new lighting system. This is an existing crosswalk and an existing street. In addition, there's clearly a policy in place to inspect and maintain streetlights within the City of Joliet, and there's numerous pages of documentation regarding complaints that have been logged with the city or the city employees themselves had observed whether or not they'd be for obstructions in the roadway or streetlights. Numerous pages of that, and nowhere from a few years before this accident up until the time of the accident was there ever a complaint that a streetlight was out on Madison Street in the City of Joliet. In reference to the letter from Clark Corcoran who worked at St. Joseph's Hospital, it has been argued and it's clear that it did not reference or relate to streetlighting or promised illumination. It was with regard to motorists would drive up, somebody would stop because a pedestrian was crossing the street, and another motorist would speed up to come along. In addition, he references an executed copy of the letter that did not come in. Well, to my knowledge, there is no executed copy of that letter. Clark Corcoran testified that if there was one, it would have been with St. Joseph's Records, but that was not correct. In addition, Clark Corcoran testified that if it had been executed and signed, it would have been sent, but we do not have a signed copy. Counsel, you have two minutes. Taking a look at all the case laws that have been presented, as well as specifically the facts that were presented and the lack of evidence, it's clear that the City of Joliet is not liable in this matter. You have raised, in questioning of plaintiff's counsel, the idea that if a streetlight were to go out three minutes before the accident occurs, would the city be liable? Clearly not. This case is about a burned-out wall. To make any city or governmental agency liable, any time a burned-out wall would go out within its city limits would be the slippery slope. They would be the ultimate insurer of every accident that occurs on the roadway. Based upon that and the evidence presented, the decision of the Trial Court should be approved. Thank you. Thank you, Mr. Weiss. Mr. McToney, summer bottle. Mr. Weiss has indicated that this case centers on a, or at least when he opened his remarks, this case centers on a burned-out traffic light, and that's not entirely true. What this case centers on is a number of elements, failure to make policies for reasonable inspection of the crosswalk, of lighting, failure to warn of an operable streetlight, and failure to maintain the streetlights. And so there's issues not only of the light 83 feet south of the intersection being out, but also of whether or not the signage was adequate at the crosswalk, and whether the lighting generally was adequate at the crosswalk. Again, there was testimony that the darkness at the crosswalk contributed to this accident, among that testimony being that of the driver of the vehicle herself. Mr. Weiss also indicated that there is a duty, or conceded there is a duty, to motorists and pedestrians. Although Mr. Weiss acknowledged that this morning, that was one of the findings of the court that was challenged before this court, and that there was no evidence that that duty exists, and Mr. Weiss himself has acknowledged that that duty does. As for the argument that ComEd is responsible for the lighting, again, the municipality is responsible if a system is put in place that is inadequate, and again I refer to the Buran case and the Wells case, which I cited earlier on. I also refer to the Shevers case, which again, the court looked at exactly the argument being raised by the city, and said that if the city implements a policy or allows somebody else to maintain or a third party to act on its roadways, and that that authorization results in harm to a pedestrian, then the city will be liable. Mr. Weiss also indicated that the court found in some instances that the plaintiff did meet its burden of presenting some evidence. I would argue that the court found in every instance that the court found that we didn't present at least some evidence to meet our burden, and I would argue again that we did. Also, the standards for 2-1110 do indicate that the court should review the evidence most favorably to the non-moving party in making its determination. I would argue that that's the case if you look at the case law that we cited. The argument that there was no evidence that additional signage was necessary, and he talks about the markings on the crosswalk, and some counterfactual arguments there, as we made, I think, again, as I pointed out in our brief, only highlights that reasonable minds might differ as to contradictory evidence was presented. Some evidence on our side, some evidence on their side, which would suggest that a non-trade directive finding was not appropriate in this case. As for the duration, I refer again to the Wells v. Kenilworth case, where in that case there was only evidence that a light was out, and in that case the court did find that there was sufficient evidence there for finding a constructive notice. As for the proximate cause argument made by counsel, again, there was contradictory evidence by Ms. Navarro, that the crosswalk was dark, that there was lighting out on Madison Street at the time of the collision. There had been lights out prior to that, and I again would argue that this is an instance where reasonable minds could differ as to whether or not the evidence merits a directive finding. I think that only highlights that a directive finding was not appropriate in this case. And the fact that Ms. Navarro was tired only highlights again that the propriety of marking a mid-street crosswalk with some sort of downward pointing arrow might be necessary. Although Ms. Navarro knew where the mid-street crosswalk was, or presumably knew because she worked there, because she said the darkest contributor to the accident had a downward arrow put at the crosswalk, it could have prevented the accident. Again, I think this is a question of fact for the finder fact. Mr. Wise also indicates that there was no evidence as to whether for sure how long this light 83 feet away from the crosswalk was unlit. Again, that would make this the darkest point in the roadway in front of that crosswalk in front of the major entranceway to the hospital, so the nearest working streetlight would be 100 feet north, the next nearest 100 feet south. Again, this was a crosswalk for an entranceway to the main entranceway to the hospital. As for the... Thank you, Mr. Macione, and Mr. Wise, thank you both for your arguments here today. The matter will be taken under advisement, written disposition will be issued, and right now we'll be in brief recess.